# EXHIBIT 3

DEBEVOISE & PLIMPTON LLP

919 Third Avenue
New York, NY 10022
Tel  212 909 6000
www.debevoise.com

**David H. Bernstein**
Partner
Tel  212 909 6696
Fax  212 521 7696
dhbernstein@debevoise.com

January 4, 2011

BY EMAIL

Honorable Paul A. Crotty
United States District Judge
500 Pearl Street
New York, NY 10007
CrottyNYSDChambers@nysd.uscourts.gov

**Pernod Ricard USA, LLC v. Luxco, Inc., 10 Civ. 1567 (PAC)**

Dear Judge Crotty:

     We represent plaintiff Pernod Ricard in the above-captioned matter.  We write in response to the letter submitted by defendant Luxco on December 30, 2010 in which it requested a pre-motion conference in advance of Luxco's planned motion to dismiss on the grounds of Pernod Ricard's alleged failure to state a claim for which relief may be granted.  Luxco's letter essentially breaks down into three arguments:

**Nature of Trade Dress**

     First, Luxco argues that Pernod Ricard has not adequately defined the trade dress at issue in this case.  Contrary to Luxco's assertions, Pernod Ricard has "precisely articulate[d] the specific elements that comprise its distinct trade dress."  *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003).  The Amended Complaint clearly states that the MALIBU® trade dress comprises elements including an opaque white colored bottle, a brown cap and a brown font, with the white opaque color of the bottle the dominant feature.  Amended Complaint ¶ 3; *see also id.* ¶ 11 ("All MALIBU® rums are packaged in the same distinctive and highly successful packaging: an opaque white bottle topped by a brown cap and featuring a brown font for the words on the label.  This trade dress, characterized by the white bottle, brown cap and brown font, makes Pernod Ricard's MALIBU® brand distinguishable from the sea of typical rum bottles."); ¶ 13 ("the trade dress specifically includes the white color of the bottle (regardless of the shape of the bottle), as well as a brown cap and the word MALIBU in a brown font"); ¶ 34 ("[t]he MALIBU® trade dress design mark . . . includes an opaque white bottle, a brown cap and a brown font for the words on the label"); ¶ 22; ¶ 29; ¶ 36; ¶ 46; *see also* U.S. Trademark Application Serial No. 77/649,693, covering a white bottle and brown cap (*see* Amended Complaint Ex. B); this application was approved by the U.S. Patent & Trademark Office ("PTO") but is currently suspended pending the conclusion of this litigation.  Pernod Ricard has thus satisfied the pleading standard for articulating the elements of its trade dress.

Honorable Paul A. Crotty                                      2                                         January 4, 2011

*See generally Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764-65 (noting that trade dress "may include features such as size, shape, color or color combinations, texture [or] graphics").

To be clear, though, even without the brown cap and brown font, Pernod Ricard contends, and expects to prove at trial, that the opaque white color of the bottle itself serves as a powerful source identifier of MALIBU® brand products. *See* Amended Complaint ¶¶ 25, 30. As the Amended Complaint discusses, this white color theme is used not only on the bottle but also throughout the marketing and promotional campaigns for MALIBU® rums. *Id.* ¶¶ 17-20. That is why so many other competitors have agreed to discontinue use of a white-colored bottle, regardless of whether their products also had a brown cap or brown text on the label. *Id.* ¶ 31.

If anything, Pernod Ricard has articulated its trade dress even more precisely than did the plaintiff in *Best Cellars*. There, the Court found that Best Cellars' identification of elements of its trade dress, including "eight colors differentiating taste categories," "shelf talkers positioned at eye level," and "no fixed aisles," sufficiently described the plaintiff's protectable trade dress. *Best Cellars*, 320 F. Supp. 2d at 66, 70-71; *see also Fruit-Ices Corp. v. Coolbrands Int'l Inc.*, 335 F. Supp. 2d 412, 419-20 (S.D.N.Y. 2004) (finding that plaintiff had adequately identified its trade dress as including "its clear wrapper," "a picture of fruit in a life-like pose conveying the flavor of the bar," and "a yellow banner announcing 'CHUNKS OF FRUIT' or 'REAL FRUIT' in black capital lettering").

This case is thus distinguishable from *National Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009), cited by Luxco. That case involved product design, to which courts "have been reluctant to extend trade dress protection," rather than product packaging. *Id.* at 561. Further, the plaintiff there "offered a vague description of its claimed trade dress and appended separate exhibits" of some of its promotional materials and images of defendants' showroom, and included no more than a "laundry list" of elements that constitute a lighting fixture's design rather than a description of its protectable trade dress. *Id.* at 561-62; *see also Sherwood 48 Assocs. v. Sony Corp. of Am.*, 2003 WL 22229422, at *2 (2d Cir. Sept. 29, 2003) (plaintiff failed to precisely identify its protectable trade dress when it described its trade dress as "the unique configuration and ornamentation of One Times Square, Two Times Square and 1600 Broadway and the advertising and signage display on One Times Square, Two Times Square and 1600 Broadway"). In contrast, Pernod Ricard has articulated precisely the elements of its MALIBU® trade dress.

**Distinctiveness of Trade Dress**

Luxco's second argument relates to the distinctiveness of the MALIBU® trade dress. Luxco states that color alone cannot be inherently distinctive, but as Luxco itself admits, Pernod Ricard has also alleged that its trade dress has acquired distinctiveness. *See* Amended Complaint ¶¶ 45, 46. Whether that trade dress has acquired distinctiveness (which is shown, *inter alia*, by Pernod Ricard's secondary meaning survey, *see* Amended Complaint ¶ 16, and by the fact that the PTO approved Pernod Ricard's application to register this trade dress, *see id.* Ex. B) is a fact issue for trial. *See Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) (secondary meaning "issues involve questions of law and fact that go well beyond the

Honorable Paul A. Crotty                          3                          January 4, 2011

pleadings"; motion to dismiss on dilution claim denied); *cf. R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 81 (S.D.N.Y. 2009) (finding an issue of fact as to acquired distinctiveness of jewelry trade dress and noting that "[d]etermining secondary meaning is a fact intensive inquiry that is generally avoided at the summary judgment phase") (quoting *Gross v. Bare Escentuals, Inc.*, 632 F. Supp. 2d 283, 291 (S.D.N.Y. 2008)); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 420 F. Supp. 2d 212, 223 (S.D.N.Y. 2005) (finding an issue of fact at summary judgment stage where plaintiff produced evidence of secondary meaning including extensive advertisement of its trade dress, consumer survey evidence and sales data). It would be grossly premature to dismiss these claims at this stage of the proceedings given that Pernod Ricard has properly alleged acquired distinctiveness.

**Fame of Trade Dress**

Luxco's third argument is that Pernod Ricard has failed to allege dilution because it has not pled facts sufficient to show fame for its trade dress. Once again, this is a fact-intensive question for resolution at trial, and is not an appropriate subject for a motion to dismiss. On the face of the Amended Complaint, Pernod Ricard has properly alleged fame and has stated a claim under the Trademark Dilution Revision Act ("TDRA"). *See* Amended Complaint ¶¶ 32, 44-49; *see also Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 323-24 (S.D.N.Y. 2007) (denying summary judgment where "consideration of the factors suggested by the TDRA could reasonably support a finding of famousness," and, "based on the evidence currently in the record, a reasonable juror could find that the mark 'possess[es] the requisite degree of recognition' necessary to maintain an action for trademark dilution"). As to the state-law dilution claim, fame is not required, and thus, even in the absence of fame, Pernod Ricard can seek injunctive relief under New York State law on account of Luxco's diluting trade dress. *Karam Prasad, LLC v. Cache, Inc.*, No. 07 Civ. 5785 (PAC), 2007 WL 2438396, at *3 (S.D.N.Y. Aug. 27, 2007).

In sum, Pernod Ricard respectfully submits that a motion to dismiss for failure to state a claim would be futile under the facts alleged in the Amended Complaint, especially when "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in [Pernod Ricard's] favor," *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010), which is the standard at this stage. Pernod Ricard thus asks that the Court deny Luxco's request to file such a motion so that the parties may move promptly to the merits of this dispute (now that the parties' extensive negotiations over settlement have reached an impasse).

                                                        Respectfully submitted,

                                                        [signature]
                                                        David H. Bernstein

cc (by email):   Philippe Zimmerman, Esq.
                 Alan S. Nemes, Esq.
                 Counsel for Luxco, Inc.